David D. Park, OSB #803358
ELLIOTT & PARK, P.C.
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon   97239-4356
Telephone:      (503) 227-1690
Facsimile:      (503) 274-8384
E-mail:   dave@elliott-park.com

Nelson R. Hall, OSB #852221
BENNETT HARTMAN MORRIS
210 SW Morrison Street, Suite 500
Portland, OR 97204
Telephone:      (503) 227-4600
Facsimile:      (503) 248-6800
E-mail:  halln@bennetthartman.com
        Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| NICHOLAS CEDERBERG and HAYLEY SHELTON, | ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-cv-2044 |
| | ) | |
| WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, an inter-governmental corporation of Washington County, Oregon, KELLY DUTRA, DENNIS DOYLE, MARTY WINE, DON BOHN, MIKE DUYCK, MICHAEL KINKADE, PAULA PETERSON, JOHN/JANE DOES 2-9, WASHINGTON COUNTY, PAT GARRETT, ERIC STONEBERG, TIMOTHY DAVID ZEIGLER, M.D., NORTHWEST ACUTE CARE SPECIALISTS, PC, an Oregon corporation; LEGACY HEALTH, an Oregon corporation; and LEGACY MERIDIAN PARK HOSPITAL, an Oregon corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | COMPLAINT (Civil Rights Violations; Negligence)  DEMAND FOR JURY TRIAL |
| Defendants. | ) | |

1 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon   97239-4356
(503) 227-1690
Fax: (503) 274-8384

Plaintiffs, by and through their attorneys David D. Park and Nelson R. Hall, allege as follows:

## INTRODUCTION

1.      On November 29, 2016, Washington County Sheriff's Deputy Eric Stoneberg, pursuant to Washington County policy, custom and practice, failed to perform his statutory duty to arrest James Tylka after developing probable cause to believe Mr. Tylka had placed his estranged wife, Katelyn Tylka, in imminent fear of death.

2.      On November 30, 2016, James Tylka attempted suicide and, there being probable cause to believe Mr. Tylka was a danger to himself and other persons, was transported pursuant to a Peace Officer Hold to Legacy Meridian Park Hospital.   Contrary to the standard of care applicable to emergency room physicians, Legacy Meridian Park Hospital physician Timothy David Zeigler, MD, failed to exercise his authority and perform his duty to detain and cause Mr. Tylka to be admitted for emergency psychiatric care.

3.      On December 25, 2016, at approximately 10:15 p.m., James Tylka shot and killed his estranged wife Katelyn Tylka in front of his parents' home in King City, Washington County, Oregon, after Katelyn Tylka arrived to transfer care of their infant daughter.

4.      On December 25, 2016, at 10:35 p.m., Washington County Consolidated Communications Agency (WCCCA) issued a county wide request for all law enforcement to attempt to locate (ATL) a white Mitsubishi automobile driven by James Tylka.   When issuing the ATL, WCCCA dispatchers, call-takers and the WCCCA shift supervisor knew that Mr. Tylka was armed and suicidal but omitted that information when broadcasting the ATL on at least two of its radio channels, Sheriff's Office 1 ("SO1") and Sheriff's Office 2 ("SO2").

 2 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

5.      At 10:40 pm, Oregon State Police Trooper Nicholas Cederberg, the sole State Trooper

patrolling in Washington County, heard the ATL while monitoring WCCCA SO1 and notified

WCCCA that he was active on the call.   Thereafter, the WCCCA shift supervisor and dispatchers

provided insufficient officer safety information to Oregon State Trooper Nicholas Cederberg and to the

Oregon State Police Dispatch Communications Center, omitting the critical information that Mr. Tylka

had just shot and killed his wife and was armed and suicidal.

6.      At 10:49 pm, Trooper Cederberg notified WCCCA dispatch that he had spotted Mr.

Tylka's vehicle and was in pursuit.   Lacking critical officer safety information, Trooper Cederberg

made tactical decisions regarding the manner and continuation of the pursuit that he would not

otherwise have made, was exposed and subjected to an unanticipated lethal attack and suffered critical,

life threatening and permanently disabling injuries.

## JURISDICTION AND VENUE

7.      Plaintiff Nicholas Cederberg brings an action for money damages pursuant to 42 U.S.C.

§1983 against the WCCCA Defendants (identified below) for deprivation of his Fourteenth

Amendment substantive due process liberty interest in bodily security, against the WCSO Defendants

(identified below) for depriving him of his Fourteenth Amendment procedural due process liberty

interest in bodily security arising under state law, ORS 133.055(2)(a), and against the Legacy Health

Defendants (identified below) for state law negligence.

8.      Plaintiff Hayley Shelton, wife of plaintiff Cederberg, brings an action for money

damages pursuant to 42 U.S.C. §1983 against all the WCCCA Defendants and the WCSO Defendants

for deprivation of her First Amendment and Fourteenth Amendment rights of intimate familial

association with her husband and against the Legacy Health Defendants for state law negligence.

3 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

9.      This Court has federal question jurisdiction under 28 U.S.C. §§1331 and 1343 and has supplemental jurisdiction under 28 U.S.C. §1367(a) over the state law claims because such claims are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this judicial district under 28 U.S.C. §1391 because all of the acts and omissions giving rise to Plaintiffs' claims for relief occurred in Washington County, Oregon, and each of the Defendants is subject to the personal jurisdiction of this Court.

**PARTIES**

11.     Plaintiffs Nicholas Cederberg and Hayley Shelton are husband and wife and citizens and residents of Clackamas County, Oregon.   On December 25, 2016 and, at all times material, Plaintiff Nicholas Cederberg was employed as a Trooper with the Oregon State Police and was assigned to the NW Region, North Plains Police Services Office, with primary duties of patrol in Washington County, Oregon.

12.     At all times material, Defendant Washington County Consolidated Communications Agency (hereinafter "WCCCA") was an Oregon Revised Statutes Chapter 190 Intergovernmental Agency created by agreement of the following local governments: Washington County; City of Hillsboro; City of Beaverton; Tualatin Valley Fire and Rescue; City of Tigard; City of Tualatin; City of Forest Grove; City of Sherwood; City of Cornelius; City of King City; City of Gaston; City of North Plains; Banks Fire District Number 13; City of Durham; City of Banks; Cornelius Rural Fire District; and Gaston Rural Fire District. Defendant WCCCA provides countywide dispatch operations for 9-1-1 call answering and all fire, emergency medical services and law enforcement dispatching for its local government members.

4 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

13.    Defendant Kelly Duytra is the Director of Defendant WCCCA, and Defendants Dennis Doyle, Marty Wine, Don Bohn, Mike Duyck, and Michael Kinkade are, or at all times material, were each members of the Chief Executive Officers Board of WCCCA.   These Defendants individually and/or collectively are the chief policy makers for WCCCA, were acting under color of law and are sued in both their official and individual capacities.

14.    Defendant WCCCA operates its 9-1-1 service through employment of DPSST certified emergency dispatch supervisors, operators and call-takers.   Defendant Paula Peterson and John/Jane Doe 2 were the WCCCA Dispatch Supervisors on duty on December 25, 2016, John/Jane Does 3 through 9 were the WCCCA dispatchers and call takers on duty on December 25, 2016.   At all times material, said supervisors, dispatchers and call-takers were acting under color of law and are sued in their official and individual capacities.

15.    Defendant Washington County is a political subdivision of the state of Oregon.

16.    Defendant Pat Garrett is the Sheriff of Washington County and is the chief policy maker for the Washington County Sheriff's Office.   At all times material Defendant Garrett was acting under color of law and is sued in his official and individual capacities.

17.    Defendant Eric Stoneberg is a Washington County Deputy Sheriff.   At all times material Defendant Stoneberg was acting within the scope of his employment and under color of law and is sued in his official and individual capacity.

18.    Defendant Legacy Meridian Park Hospital is registered with and doing business in the State of Oregon as a Domestic Non-Profit corporation providing emergency department medical and diagnostic services for mental health.   At all times material, Legacy Meridian Park Hospital was subject to ORS, Chapter 426 and subject to standards of medical practice for the screening, evaluation,

5 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

admission, holding and discharge of patients with suicidal and homicidal risks.

19.    Defendant Legacy Health is registered with and doing business in the State of Oregon as a Domestic Non-Profit corporation providing emergency department medical and diagnostic services for mental health.   At all times material, Legacy Health was subject to ORS, Chapter 426 and subject to standards of medical practice for the screening, evaluation, admission, holding and discharge of patients with suicidal and homicidal risks.

20.    Defendant Northwest Acute Care Specialists, PC is registered with and doing business in the State of Oregon as a Domestic Professional Corporation providing emergency department medical and diagnostic services for mental health.   At all times material, Northwest Acute Care Specialists, PC contracted with Legacy Meridian Park Hospital and Legacy Health to provide emergency department physicians, including Timothy David Zeigler, M.D.   At all times material, Northwest Acute Care Specialists, PC was subject to ORS, Chapter 426 and subject to standards of medical practice for the screening, evaluation, admission, holding and discharge of patients with suicidal and homicidal risks.

21.    Defendant Timothy David Zeigler, M.D. is a physician licensed by and practicing medicine in the State of Oregon. At all times material, Timothy David Zeigler, M.D. was employed by or in a contractual relationship with Legacy Meridian Park Hospital, Legacy Health, and Northwest Acute Care Specialists, PC.   At all times material, Defendant Zeigler was subject to ORS, Chapter 426 and subject to standards of medical practice for the screening, evaluation, admission, holding and discharge of patients with suicidal and homicidal risks.   At all times material, Defendant Zeigler was on duty in the emergency department of Legacy Meridian Park Hospital on November 30, 2016.

22.    Defendants Timothy David Zeigler, M.D., Northwest Acute Care Specialists, PC,

6 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

Legacy Meridian Park Hospital and Legacy Health are collectively referred to herein as "the Legacy Health Defendants."

## FACTS

A.    <u>Facts Supporting Liability of the WCCCA Defendants</u>.

23.    Upon information and belief, at all times material Defendant WCCCA, and the local member governments comprising WCCCA, have been parties to one or more law enforcement mutual aid and assistance agreements with the Oregon State Police (OSP).

24.    At all times material, Defendants WCCCA, Kelly Duytra, Dennis Doyle, Marty Wine, Don Bohn, Mike Duyck, Michael Kinkade, Paula Peterson and John/Jane Does 2-9 (hereinafter collectively referred to as the "WCCCA Defendants") were informed and knew or had knowledge through firsthand experience that WCCCA dispatch operators requested assistance from OSP Troopers for law enforcement related emergency response within Washington County's jurisdictional boundaries and that OSP Troopers responded to such requests and provided assistance.

25.    Upon information and belief, prior to December 25, 2016, OSP communicated to Defendant WCCCA that OSP had installed and was testing a new voice communications system, that it was unreliable at times, and that WCCCA should, when requesting aid and assistance from OSP Troopers, immediately notify the OSP Communications Center (hereinafter "OSP Dispatch") of the request for OSP assistance and all related officer safety information, and immediately upon WCCCA's knowledge that an OSP Trooper was responding, confirm with such trooper his or her receipt of all critical officer safety information about the incident.

26.    At all times material the WCCCA Defendants were informed and knew or had knowledge through firsthand experience that:

7 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

a.  In location and apprehension of fleeing homicide suspects and other serious, life-threatening incidents requiring law enforcement response, seconds and minutes matter and clear, reliable communication of critical information about the incident is essential for the safety of responding law enforcement officers.

b.  Information that an incident suspect has shot his wife, is armed and is suicidal is critical officer safety information.

c.  Failure to communicate known critical information about an incident suspect will expose responding law enforcement officers to risks and dangers that would otherwise not exist.

d.  The WCCCA Computer-Aided Dispatch (CAD) system was not linked with the CAD system used by OSP Dispatch.

e.  WCCCA dispatcher center operators, inclusive of supervisors, dispatchers and call takers, did not have access to real time information concerning the geographic location of OSP Troopers within WCCCA's jurisdictional boundaries.

f.  OSP Troopers were unable to call up and view incident information entered in the WCCCA CAD system on the mobile data terminals in their patrol cars.

g.  OSP communications equipment was incompatible with WCCCA dispatch radio communications frequencies and WCCCA communications equipment.

h.  The OSP Communications Center ("OSP Dispatch") and OSP Troopers in the field were incapable of monitoring WCCCA radio dispatch communications using OSP communications equipment.

i.  WCCCA had issued OSP Troopers used portable hand operated radio "pack sets" to

8 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

enable OSP Troopers to communicate with WCCCA dispatch and WCCCA dispatched
law enforcement agencies on WCCCA radio communications frequencies.

j.     WCCCA dispatched police services on multiple radio frequencies or channels, e.g.,
Sheriff's Office One ("SO1"), Sheriff's Office Two ("SO2") and South Cities ("SC").

k.     WCCCA pack sets can monitor only one WCCCA radio channel at a time.

l.     WCCA pack sets do not maintain reception at all times within Washington County's
jurisdictional boundaries.

m.     OSP Troopers responding to WCCCA dispatched incidents have to monitor and operate
two voice communications systems simultaneously and are less efficient and far less
certain of receiving critical information about an incident.

n.     OSP Trooper voice communications with OSP Dispatch were dependent upon a new and
experimental trunked voice communications system (radio) that was, itself,   frequently
unreliable.

o.     A single OSP Trooper is assigned to work night shifts in Washington County.

p.     No OSP Sergeants work night shift in Washington County.

q.     Absent direct confirming radio communication with a responding OSP Trooper,
WCCCA could not know whether the OSP Trooper had received critical information
about an incident.

27.     Upon information and belief, prior to December 25, 2016, the WCCCA Defendants
were informed and knew of one or more incidents in which OSP Troopers were injured and/or the safety
of OSP Troopers had been placed at risk by missed or uncommunicated critical information and/or
failed or malfunctioning voice communications when responding to aid or assist on WCCCA

9 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

dispatched incidents.

28.     On December 25, 2016, at approximately 10:15 p.m., James Tylka shot and killed his estranged wife Katelyn Tylka in front of his parents' home in King City, Washington County, Oregon, after Katelyn Tylka arrived to transfer care of their infant daughter to James Tylka.

29.     On December 25, 2016, at 10:35 p.m., Defendant John/Jane Doe 3, the WCCCA dispatcher assigned to the South Cities radio channel, operator A6599, radio dispatched a county wide request for all law enforcement to attempt to locate (ATL) a white Mitsubishi automobile driven by James Tylka and announced that Tylka was armed with a handgun.

30.     At approximately 10:38 p.m., Defendants John/Jane Doe 4, operator A6597, and John/Jane Doe 5, operator A6501, broadcast the ATL and vehicle description on WCCCA radio channels SO1 and SO2, respectively, but on information and belief made no mention of the charges or that the suspect was armed and suicidal.

31.     On December 25, 2016, Plaintiff Nicholas Cederberg was on duty as an OSP Trooper, working a 4:00 p.m. to 2:00 a.m. shift.

32.     At approximately 10:38 p.m. and while on a break at the home of his brother and monitoring WCCCA channel SO1, Plaintiff Nicholas Cederberg heard a county wide ATL for a white Mitsubishi.

33.     At or before 10:40 p.m., Defendants WCCCA supervisors Paula Peterson and John/Jane Doe 2, and WCCCA dispatchers John/Jane Does 3, 4 and 5, were informed and knew that James Tylka had likely murdered his wife and was armed and suicidal and recognized this information as critical officer safety information (hereinafter "critical information").   At approximately 10:40 p.m., information that James Tylka was a homicide suspect and was suicidal was communicated to

10 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

Washington County law enforcement agencies on WCCCA's South Cities radio channel and, between 10:40:15 p.m. and 10:40:37 p.m., such information was entered into WCCCA's Computer Aided Dispatch System by Defendant John/Jane Doe 3.

34.    At approximately 10:40 pm, Plaintiff Nicholas Cederberg, notified WCCCA on WCCCA radio channel "SO1" that he was active on the ATL.   Plaintiff Nicholas Cederberg was unaware of the critical information.

35.    At 10:41:49, a dispatcher from OSP Dispatch called WCCCA and spoke with Defendant John/Jane Doe 6, logged in as call taker 1, operator A6532, to advise that an OSP trooper reported they were en route Code 3 on a WCCCA call and to inquire about the nature of the call. Defendant John/Jane Doe 6 informed OSP Dispatch that there was an ATL for a homicide suspect and provided a vehicle description and last seen location. Defendant John/Jane Doe 6 did not inform the OSP dispatcher that the homicide suspect was armed and suicidal.

36.    After receiving notice that Plaintiff Nicholas Cederberg was responding to the ATL, none of Defendants Paula Peterson or John/Jane Does 2-9 verified that Plaintiff Nicholas Cederberg had received the critical information.

37.    At approximately 10:49 p.m., Plaintiff Nicholas Cederberg notified WCCCA dispatch that he had spotted Mr. Tylka's vehicle and was in pursuit.

38.    After receiving notice that Plaintiff Nicholas Cederberg was in pursuit, none of Defendants Paula Peterson or John/Jane Does 2-9 notified OSP Dispatch of the critical information nor verified that Plaintiff Nicholas Cederberg had received the critical information.

39.    At and after 10:49 p.m., Plaintiff Nicholas Cederberg made tactical decisions regarding the manner and continuation of the pursuit that he would not otherwise have made had he possessed the

11 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

critical information including, but not limited to, the decision to activate lights and siren and the decision to follow Tylka's vehicle down Gimm Lane, a narrow, dark and relatively isolated rural dead end road.

40.      At approximately 10:52 p.m. James Tylka rammed his vehicle into Plaintiff Nicholas Cederberg's vehicle while simultaneously initiating a gun battle with Plaintiff Nicholas Cederberg and shot Plaintiff Nicholas Cederberg twelve times.

B.      Facts Supporting Liability of the Washington County Defendants.

41.      On November 29, 2016, Katelyn Tylka called 9-1-1 to report telephone harassment and death threats from her estranged husband, James Tylka.

42.      Defendant Washington County Sheriff's Deputy Eric Stoneberg was dispatched to respond to Katelyn Tylka's call and conducted an in-person interview of Ms. Tylka at her residence in Beaverton.      During the course of his investigation, Defendant Stoneberg concluded that he had probable cause to arrest James Tylka for menacing, stating "James' words, through text message and phone calls, placed Kate in fear of serious physical injury."

43.      Information known to Defendant Stoneberg supporting probable cause included the following: Ms. Tylka was married to James Tylka, they were separated, they shared a child together without a child custody agreement, James Tylka was bipolar and mentally unstable, there had been multiple incidents of past domestic abuse and James Tylka had sent Ms. Tylka text messages and left voice messages threatening to kill her and to harm her new boyfriend, she had not been sleeping at her home for fear that he would come and hurt her and she had been calling in sick to work.

44.      After developing probable cause to arrest, Defendant Stoneberg located and interviewed James Tylka.      Mr. Tylka admitted that he had made the threatening communications to his wife, that he

12 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

believed he was bipolar, that he had been abusing alcohol and drugs and that he had a mental health appointment set for December 14, 2016.

45.    Defendant Stoneberg did not arrest James Tylka.

46.    On November 29, 2016, and at all times material, Defendant Stoneberg was aware that a failure to perform the duty of mandatory arrest of a domestic violence perpetrator created a risk of serious bodily harm or death to such perpetrator's domestic partner and to any law enforcement officer who might be called to respond to a subsequent act of domestic violence by the perpetrator.

47.    On November 29, 2016, Defendant Stoneberg had a nondiscretionary duty to arrest James Tylka pursuant to ORS 133.055(2), which provides in relevant part:

> [W]hen a peace officer responds to an incident of domestic disturbance and has probable cause to believe . . . that one such person has placed the other in fear of imminent serious physical injury, the officer shall arrest and take into custody the alleged assailant or potential assailant.

48.    The arrest of a domestic violence perpetrator for menacing pursuant to ORS 133.055(2) triggers a series of procedures intended to and operating to greatly reduce the likelihood of subsequent acts of domestic violence including, but not limited to, no-contact orders with the spouse, a prohibition upon possession of firearms and prohibition of visitation with children during the pendency of the charges.

49.    Upon information and belief, at all times material Defendants Washington County and Sheriff Pat Garrett had a policy, custom or practice of non-observance and non-enforcement of the statutory duty of mandatory arrest of a domestic violence perpetrator, inclusive of a policy, custom or practice of failure to discipline deputies who failed to perform their statutory duty of mandatory arrest.

13 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

50.     Upon information and belief, at all times material Defendants Washington County and Sheriff Pat Garrett failed to train their deputy sheriffs, including Defendant Eric Stoneberg, that the duty to arrest perpetrators of domestic violence is mandatory, not discretionary.

51.     Prior to November 29, 2016, there were one or more occurrences in which Washington County deputy sheriffs failed to perform their mandatory duty to arrest perpetrators of domestic violence and, as a consequence of the breach of that duty, those perpetrators went on to commit violence against their domestic partners and to threaten the safety of responding sheriff's deputies.   The name and approximate date of one such prior incident, so far as presently known to Plaintiffs is:

> On May 26, 2013, Washington County deputies, including Defendant Stoneberg's wife, Deputy Leanne Stoneberg, failed to perform their mandatory duty to arrest Kenneth Van Patten.   On May 27, 2013, Kenneth Van Patten murdered his wife, Melinda, wounded a house guest, then committed suicide.

52.     Based upon the severely negative outcomes of those prior breaches of duty some of which upon information and belief threatened the safety of responding law enforcement officers, the consequent need for training of deputies in their mandatory arrest obligations under ORS 133.055(2) was obvious and Defendants Washington County and Sheriff Garrett were deliberately indifferent to the need for such training.

53.     At all times material, Defendants Washington County and Pat Garrett were informed that Defendant Stoneberg failed to arrest James Tylka on November 29, 2016 and, with knowledge of all material facts, took no disciplinary action against Defendant Stoneberg nor otherwise acted to repudiate or disavow Defendant Stoneberg's decision making.   Further, upon information and belief, Defendants Washington County and Garrett did not commence an investigation of Defendant Stoneberg's actions and did not institute policies, procedures, training or supervision to make violation

14 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

of domestic violence victims and first responders' constitutional rights resulting from failure of

deputies to conduct mandatory arrests less likely.

C.    <u>Facts Supporting Liability of Defendants Zeigler, Legacy Meridian Park Hospital,
      Legacy Health and Northwest Acute Care Specialists, PC.</u>

54.    Based on information and belief, at all times material, there was an employment or other

contractual relationship between Defendants Zeigler, Legacy Meridian Park Hospital, Legacy Health,

and Northwest Acute Care Specialists whereby on November 30, 2016, Defendant Zeigler was on duty

as an emergency department physician at Legacy Meridian Park Hospital.

55.    On November 30, 2016 James Tylka attempted suicide by overdosing on Insulin.

56.    At approximately 9:30 p.m., King City Police Officer Brian Sigler responded to the

location of the attempted suicide and developed probable cause to believe that James Tylka was a

danger to himself and to his wife Kate.   The information supporting probable cause included Officer

Sigler's observation of Mr. Tylka as barely conscious, the statements of responding EMTs and

paramedics that Mr. Tylka needed emergency medical care, the statements of Kate Tylka that James

Tylka had been depressed, purposely took too much insulin, had recently purchased knives with which

to murder her and their baby, that police had been called the preceding day as a result of multiple threats

from Mr. Tylka to kill her and their baby and the presence of recently purchased knives in the trunk of

Mr. Tylka's car.

57.    While Mr. Tylka was being transported by ambulance to Legacy Meridian Park

Hospital, Officer Sigler seized Mr. Tylka's knives and faxed a Peace Officer Hold ("POH") form to the

hospital.   Upon information and belief, all of the foregoing information supporting probable cause was

included in Officer Sigler's POH form.

15 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

58.     On information and belief, on November 30, 2016, Defendant Timothy Zeigler was on duty at the time Mr. Tylka arrived for treatment and was acting within the course and scope of his agency and employment for Defendant Legacy Meridian Park Hospital.   Mr. Tylka was examined and evaluated in the Legacy Meridian Park Hospital emergency department, including examination and assessment by Defendant Zeigler, with a history of attempted suicide and with a history of threatened homicides of his wife and child.

59.     Upon information and belief, Defendant Zeigler was responsible for examination of James Tylka and assessment of his needs for emergency mental health treatment.

60.     At approximately 11:15 p.m., Defendant Zeigler called the King City Police Department to complain about Mr. Tylka being brought to the emergency room, spoke to Officer Thatcher and stated that the circumstances "sounded like a criminal matter."   When Officer Thatcher reiterated that Mr. Tylka was taken to the hospital on a POH and offered to have Officer Sigler call him, Dr. Zeigler declined stating, "nope, I'll take care of it."

61.     At all times material, James Tylka exhibited signs and symptoms sufficient to inform a reasonably well-trained emergency room physician that he was mentally ill and that behaviors resulting from his mental illness presented an immediate threat to himself and to others.

62.     Dr. Zeigler did not admit Mr. Tylka to the hospital for a mental health emergency or approve Mr. Tylka for emergency care at an appropriate non-hospital mental health treatment facility and released him from the hospital later that same evening.

63.     On December 25, 2016, Tylka murdered his wife and during the ensuing encounters with law enforcement personnel shot and attempted to kill Plaintiff Oregon State Trooper Nicholas Cederberg.

16 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

64.     Upon information and belief, had Mr. Tylka been admitted for emergency mental health treatment, he would have been found to have met the legal requirements for involuntary civil commitment for mental health treatment and would either have received in-custody mental health treatment sufficient to prevent his mental illness from producing the homicidal and suicidal behavior that erupted on December 25, 2016, or would have remained in custody in an appropriate mental health treatment facility and not at large on December 25, 2016.

## DAMAGES

<u>Nicholas Cederberg</u>:

65.     As a result of the actions of Defendants, and each of them, Plaintiff Nicholas Cederberg has suffered injuries and damages, including physical and mental pain and suffering and permanent limitations and impairments, as set forth herein:

a.  A gunshot wound to the left chest whereby the bullet entered the left anterior-lateral chest wall, fracturing the left sixth rib, lacerating the diaphragm, and lodging in the left lower lobe of Plaintiff Nicholas Cederberg's lung; bullet fragments were identified in the left main bronchus, the left pulmonary artery, and the left chest wall; the left lung collapsed, with massive hemorrhaging into the left lung.

b.  A gunshot wound to the right abdomen whereby the bullet entered the abdomen in the right lower quadrant, causing massive hemorrhage to the right internal iliac artery and right internal iliac vein and shearing of the right iliacus muscle, then lodged in the right sacrum; massive hemorrhaging into the pelvis caused formation of a retroperitoneal hematoma; a 10 x 4 centimeter hematoma along the right pelvic sidewall caused compression on the obturator nerve and compression and displacement of the urinary

17 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

bladder to the left; compression of the obturator nerve causes medial thigh and groin pain, weakness with leg adduction and loss of sensation to the medial thigh.   The bullet remains in the first sacral vertebral body with bullet fragments still present in the right iliacus muscle.

c.   A gunshot wound to the left flank area whereby the bullet entered the left posterior flank and lodged in the spinal canal at the L3-4 level; a laminotomy was performed at L3-4 to remove the bullet from the spinal canal.

d.   Six gunshot wounds to the left forearm, with comminuted open fractures of the ulna, requiring an open reduction and internal fixation to the left ulna using a 12 hole plate.   Bullet fragments remain in Plaintiff Nicholas Cederberg's left forearm.

e.   Two gunshot wounds to the volar aspect of the right forearm, with injury to the right ulnar artery and ulnar nerve, right ulnar artery thrombosis and right ulnar nerve palsy requiring a myocutaneous pedicle rotation flap closure and resulting in loss of sensation in the right hand, loss of coordination of the fingers, hand weakness and loss of grip strength and pain.

f.   Severe right lower extremity neuropathic pain, a neurogenic bladder and neurogenic bowel, with resulting bowel and bladder incontinence.

g.   Complex regional pain syndrome secondary to the injury of the sacral nerves.

h.   Post Traumatic Stress Disorder.

66.      As a result of the actions of Defendants, and each of them, with the resulting injuries and wounds set forth herein, including permanent limitations and impairments, Plaintiff Nicholas Cederberg has suffered economic losses and damages as set forth herein (subject to amendment before trial):

18 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon   97239-4356
(503) 227-1690
Fax: (503) 274-8384

a.  Past medical charges of $403,860.55:

b.  Future medical charges to be provided at trial:

c.  Past wage loss of $185,000:

d.  Future lost wages and earning capacity in an amount to be determined at trial:

e.  Loss of capacity to provide economically valuable services to family and household with resulting costs to be determined at trial.

67.    As a result of the actions of Defendants, and each of them, with the resulting injuries and wounds set forth herein, including permanent limitations and impairments, Plaintiff Nicholas Cederberg has suffered non-economic damages as set forth herein:

a.  Past pain and suffering with loss of quality of life: $2,000,000.00.

b.  Future pain and suffering with loss of quality of life: $18,000,000.00.

Hayley Shelton:

68.    At all times material, Hayley Shelton and Nicholas Cederberg have been wife and husband, in a loving relationship, sharing a home together, and sharing life together with plans and dreams.

69.    Plaintiff Nicholas Cederberg was hospitalized or in a rehabilitation facility from December 25, 2016 to February of 2017.

70.    Commencing in February of 2017, Plaintiff Hayley Shelton became the primary nurse and caregiver for her husband, who required around the clock in-home care with all aspects and activities of daily living including, but not limited to, mobility, toileting, bathing, feeding, medication management.   Plaintiff Hayley Shelton was unable to work during this five-month period.

71.    Since December 25, 2016, Plaintiff Hayley Shelton has performed all household work

19 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

and responsibilities, work that was formerly shared on an equal basis with her husband.

72.     Since December 25, 2016, Plaintiff Hayley Shelton has been unable to be physically intimate with her husband.

73.     Since December 25, 2016, Plaintiff Hayley Shelton has experienced a devastating loss of emotional intimacy with her husband.

74.     Since December 25, 2016, Plaintiff Hayley Shelton has experienced social isolation from friends, family and co-workers due to the increased demands of caring for her husband.

75.     As the wife and life partner of Nicholas Cederberg,   as a result of the injuries and disabilities suffered by her husband,   Plaintiff Hayley Shelton has suffered a loss of consortium, has substantially lost and been deprived of the benefits of the marriage relationship, the companionship and services of her husband.   As a direct consequence of the actions of Defendants, and each of them, Plaintiff Hayley Shelton has suffered damages as set forth herein:

 a.   Non-economic damages in the amount of $10,000,000.00.

 b.   Economic damages in an amount to be proven at trial.

## FIRST CLAIM FOR RELIEF
**Violation of Fourteenth Amendment by Danger Creation (42 U.S.C. §1983)**
**By Plaintiff Nicholas Cederberg**
**(Against WCCCA, Kelly Dutra, Dennis Doyle, Marty Wine, Don Bohn, Mike Duyck,**
**Michael Kinkade and Paula Peterson in their official and individual capacities,**
**and John/Jane Does 2-9 in their individual capacities)**

76.     Plaintiff Nicholas Cederberg incorporates by reference all allegations in the preceding paragraphs 1 through 14, 23 through 40 and 65 through 67, as if fully set forth herein.

77.     The Fourteenth Amendment of the Constitution protects a citizen's liberty interest in his own bodily security.

20 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

78.     Defendants Kelly Dutra, Dennis Doyle, Marty Wine, Don Bohn, Mike Duyck and

Michael Kinkade (collectively "WCCCA Policy Makers"), acting as final policy makers for Defendant

WCCCA, knowingly and intentionally directed, authorized or approved WCCCA to request aid and

assistance from OSP Troopers within their jurisdiction for Washington County law enforcement

agencies on high risk incidents, without adopting, instituting or requiring policies, procedures, training

and supervision that would ensure that they provide responding, aiding or assisting OSP Troopers with

critical officer safety information concerning such incidents.   At all times material, the need for such

policies, procedures, training and supervision was known to the WCCCA Policy Makers, or the need

was obvious based on the existing policies, procedures, training and supervision applicable to dispatch

communications with law enforcement agencies serviced by WCCCA.

79.     Defendants Paula Peterson and John/Jane Does 2 through 9 affirmatively created a

dangerous situation for Plaintiff Nicholas Cederberg and exposed him to far greater danger than he

would otherwise have encountered in his pursuit of James Tylka by issuing a jurisdiction-wide ATL on

all WCCCA radio channels knowing that an OSP Trooper was likely to receive the request for

assistance and respond; providing insufficient information about Tylka on WCCCA radio channels SO1

and SO2 when dispatching the jurisdiction-wide ATL; by providing insufficient and untimely

information to the OSP Dispatch Communications Center by cell phone communication after

dispatching the jurisdiction-wide ATL; and by providing insufficient information to Plaintiff Nicholas

Cederberg immediately upon receipt of Plaintiff Nicholas Cederberg's radio notification that he was

responding to the ATL.

80.     Each of Defendant WCCCA Policy Makers and Defendants Paula Peterson and

John/Jane Does 2-9 engaged in the foregoing conduct with deliberate indifference to and/or conscious

21 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

disregard of a known and substantial risk of harm to OSP Troopers, including Plaintiff Nicholas Cederberg.

81.    The unconstitutional policies, customs and practices of Defendant WCCCA and Defendant Policy Makers, inclusive of these Defendants' failures to train and supervise their dispatch center supervisors, dispatchers and call takers, were the moving force behind Defendants Paula Peterson's and John/Jane Does 2 through 9's deprivation of Plaintiff Nicholas Cederberg's protected liberty interest in bodily security.

82.    Following Plaintiff Nicholas Cederberg's deadly force encounter with James Tylka of December 25, 2016, and with full knowledge of the facts related thereto, Defendants WCCCA Policy Makers made a deliberate choice to endorse and ratify the unconstitutional acts of Defendants Paula Peterson and John/Jane Does 2 through 9.

83.    As a direct and proximate consequence of Defendants' constitutional violations, Plaintiff Nicholas Cederberg has sustained economic damages, as follows:

a.    Reasonable and necessary past medical care and treatment of $403,860.55

b.    Reasonable and necessary future medical care and treatment in amounts to be proved at trial.

c.    Reasonable and necessary expenses for vocational evaluation of $1,736.00.

d.    Reasonable and necessary expenses for vocational rehabilitation in an amount to be proved at trial.

e.    Wage loss to the date of the filing of this Complaint in the amount of $185,000.00.

f.    Loss of future earning capacity in an amount to be proved at trial.

84.    Pursuant to 42 U.S.C. §1988, Plaintiff Nicholas Cederberg is entitled to recover his

22 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

reasonable attorney fees and costs.

85.     As a further direct and proximate consequence of Defendants' constitutional violations, Plaintiff Nicholas Cederberg was engaged in a shootout with an armed and suicidal suspect, was shot twelve times and sustained multiple severe and permanently disabling physical injuries, and mental pain, suffering, fear, anxiety and distress, all to his noneconomic damage as set forth herein:

    a.   Past:    $2,000,000.00;

    b.   Future:    $18,000,000.00.

**SECOND CLAIM FOR RELIEF**
**Violation of Fourteenth Amendment (42 U.S.C. §1983)**
**(By Plaintiff Nicholas Cederberg against Defendant Eric Stoneberg in his individual capacity)**

86.     Plaintiff Nicholas Cederberg incorporates by reference all allegations in the preceding paragraphs 1 through 11, 15 through 17, 41 through 53 and 65 through 67, as if fully set forth herein.

87.     ORS 133.055(2) creates a liberty interest for all persons who may be harmed by perpetrators of domestic violence, including law enforcement officers, that is afforded procedural due process protection under the Fourteenth Amendment.

88.     Defendant Stoneberg violated Plaintiff Nicholas Cederberg's constitutional right to procedural due process by failure to arrest James Tylka for domestic violence.

89.     As a direct and proximate consequence of Defendant's constitutional violations, Plaintiff Nicholas Cederberg has sustained economic damages, as follows:

    a.    Reasonable and necessary past medical care and treatment of $403,860.55

    b.    Reasonable and necessary future medical care and treatment in amounts to be proved at trial.

    c.    Reasonable and necessary expenses for vocational evaluation of $1,736.00.

23 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

d.    Reasonable and necessary expenses for vocational rehabilitation in an amount to be proved at trial.

e.    Wage loss to the date of the filing of this Complaint in the amount of $185,000.00.

f.    Loss of future earning capacity in an amount to be proved at trial.

90.    Pursuant to 42 U.S.C. §1988, Plaintiff Nicholas Cederberg is entitled to recover his reasonable attorney fees and costs.

91.    As a further direct and proximate consequence of Defendant's constitutional violations, Plaintiff Nicholas Cederberg became engaged in a shootout with an armed and suicidal suspect, was shot twelve times and sustained multiple severe and permanently disabling physical injuries, and mental pain, suffering, fear, anxiety and distress, all to his noneconomic damage as set forth herein:

a.  Past:        $2,000,000.00

b.  Future:      $18,000,000.00.

### THIRD CLAIM FOR RELIEF
### Violation of Fourteenth Amendment (42 U.S.C. §1983)
### By Plaintiff Nicholas Cederberg
### (*Monell* claim against Defendants Washington County and Pat Garrett in his official capacity)

92.    Plaintiff Nicholas Cederberg incorporates by reference all allegations in the preceding paragraphs 1 through 11, 15 through 17, 41 through 53 and 65 through 67, as if fully set forth herein.

93.    Defendants Washington County and Sheriff Pat Garrett, acting as final policy maker for Washington County, violated Plaintiff Nicholas Cederberg's constitutional right to procedural due process by adopting or engaging in a policy, custom or practice of non-enforcement of ORS 133.055(2), by failing to train Washington County deputies in the requirements, standards and procedures necessary to fulfill the duties required of police officers by said statute, and by making the deliberate choice, with

24 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

full knowledge of all material facts, to endorse and ratify the unconstitutional conduct of Defendant Stoneberg.

94.    Defendants' policies, customs and practices described in the preceding paragraph were instituted with deliberate indifference to the constitutionally protected liberty interests of law enforcement officers, including Plaintiff Nicholas Cederberg, who might be called upon to respond to domestic violence incidents, and such policies, customs and practices were the moving force behind Defendant Stoneberg's unconstitutional act.

95.    As a direct and proximate consequence of Defendants' constitutional violations, Plaintiff Nicholas Cederberg has sustained economic damages, as follows:

    a.    Reasonable and necessary past medical care and treatment of $403,860.55

    b.    Reasonable and necessary future medical care and treatment in amounts to be proved at trial.

    c.    Reasonable and necessary expenses for vocational evaluation of $1,736.00.

    d.    Reasonable and necessary expenses for vocational rehabilitation in an amount to be proved at trial.

    e.    Wage loss to the date of the filing of this Complaint in the amount of $185,000.00.

    f.    Loss of future earning capacity in an amount to be proved at trial.

96.    As a further direct and proximate consequence of Defendants' constitutional violations, Plaintiff Nicholas Cederberg became engaged in a shootout with an armed and suicidal suspect, was shot twelve times and sustained multiple severe and permanently disabling physical injuries, and mental pain, suffering, fear, anxiety and distress, all to his noneconomic damages as set forth herein:

25 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

    a.   Past:     $2,000,000.00

    b.   Future:   $18,000,000.00.

97.     Pursuant to 42 U.S.C. §1988, Plaintiff Nicholas Cederberg is entitled to recover his reasonable attorney fees and costs.

### FOURTH CLAIM FOR RELIEF
**Violation of First and Fourteenth Amendment Rights to Familial Association (42 U.S.C. §1983) By Plaintiff Hayley Shelton against All Defendants**

98.     Plaintiff Hayley Shelton incorporates by reference all allegations in the preceding paragraphs 1 through 97, as if fully set forth herein.

99.     Plaintiff Hayley Shelton possesses First and Fourteenth Amendment liberty interests in her familial association with her husband, Plaintiff Nicholas Cederberg and, at all times material, shared an intimate human relationship with her husband involving deep attachment and commitment to each other as a result of their having shared each other's thoughts, beliefs, and experiences throughout the years of their marriage.

100.     By and as a result of Defendants' violations of Plaintiff Nicholas Cederberg's protected liberty interests in personal security, Defendants violated and deprived Plaintiff Hayley Shelton of her right of freedom of familial association with her husband.   Plaintiff Shelton has suffered the loss of consortium and the loss of companionship and services of her husband. As a direct consequence of the actions of Defendants, and each of them, Plaintiff Hayley Shelton has suffered damages as set forth herein:

    a.    Non-economic damages in the amount of $10,000,000.00.

    b.    Economic damages in an amount to be proven at trial.

///

26 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

## FIFTH CLAIM FOR RELIEF
### Medical Negligence - Failure to Admit and Treat Dangerously Mentally Ill Patient
### By Both Plaintiffs
### Against Defendants Thomas Zeigler, MD, Legacy Meridian Park Hospital,
### Legacy Health and Northwest Acute Care Specialists, PC

101.    Plaintiffs incorporate by reference all allegations in the preceding paragraphs 1 through 11, 18 through 22, 54 through 75, as if fully set forth herein.

102.    Based on information and belief, Defendants Zeigler, Legacy Meridian Park Hospital, Legacy Health, and Northwest Acute Care Specialists, and each of them, were negligent in violating medical standards of practice and ORS, Chapter 426 for the evaluation, assessment, admission, holding and discharge of persons with a reputed or known history of risks for homicide and suicide and negligent in the coordination with health and law enforcement authorities, in one or more of the following particulars:

a.  In failing to properly or adequately examine and assess James Tylka for mental health risks of harm to self or others;

b.  In failing to properly or adequately assess James Tylka for mental health risks of harm to self or others given his reported history of threatened homicide and suicide;

c.  In failing to obtain a mental health consultation for the assessment and evaluation of James Tylka and his risk of harm to self or others;

d.  In failing to order an admission to the hospital for further assessment, evaluation, diagnosis and treatment of James Tylka;

e.  In failing to order and secure a physician's mental health hold of James Tylka;

f.  In failing to order and secure transportation of James Tylka from Legacy Meridian Park Hospital to a community mental health authority;

27 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon   97239-4356
(503) 227-1690
Fax: (503) 274-8384

g.   In violating medical standards which required James Tylka to be admitted to the hospital for mental health treatment or required transportation to and admission to a state approved and appropriate mental health authority treatment facility;

h.   In failing to properly or adequately communicate with police and circuit court authorities the mental health assessment, evaluation, diagnoses, conclusions and decisions regarding James Tylka and his risks of harm to self or others;

i.   In discharging James Tylka from Legacy Meridian Park Hospital when he presented with known risks of harm to self or others.

j.   In creating a foreseeable risk that James Tylka would harm others, including Plaintiff Nicholas Cederberg.

103.   As a direct and proximate consequence of the negligence of the Legacy Health Defendants, and each of them, Plaintiff Nicholas Cederberg sustained economic damages, as follows:

a.   Reasonable and necessary past medical care and treatment of $403,860.55

b.   Reasonable and necessary future medical care and treatment in amounts to be proved at trial.

c.   Reasonable and necessary expenses for vocational evaluation of $1,736.00.

d.   Reasonable and necessary expenses for vocational rehabilitation in an amount to be proved at trial.

e.   Wage loss to the date of the filing of this Complaint in the amount of $185,000.00.

f.   Loss of future earning capacity in an amount to be proved at trial.

104.   The negligence of the Legacy Health Defendants, and each of them, was a direct, material and foreseeable cause of James Tylka shooting and attempting to murder Plaintiff Nicholas

28 - COMPLAINT (Civil Rights Violations; Negligence)

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384

Cederberg whereby Plaintiff Nicholas Cederberg was shot twelve times and sustained multiple severe and permanently disabling physical injuries, and mental pain, suffering, fear, anxiety and distress, all to his noneconomic damage as set forth herein:

    a.  Past:     $2,000,000.00

    b.  Future:   $18,000,000.00.

105.    As a further direct and proximate consequence of the Legacy Health Defendants' negligence, Plaintiff Hayley Shelton has suffered the loss of consortium and the loss of companionship and services of her husband and has suffered damages as set forth herein:

    a.    Non-economic damages in the amount of $10,000,000.00.

    b.    Economic damages in an amount to be proven at trial.

WHEREFORE, plaintiffs pray for judgment against Defendants, as follows:

1.    In favor of Plaintiff Nicholas Cederberg for noneconomic in the amount of $20,000,000.00 and economic damages in such amounts determined fair and reasonable by the jury upon proof at trial, together with prejudgment interest on each of said sums;

2.    In favor of Plaintiff Hayley Shelton for noneconomic in the amount of $10,000,000.00 and economic damages in such amount determined fair and reasonable by the jury upon proof at trial, together with prejudgment interest on each of said sums;

3.    In favor of both plaintiffs, for costs, disbursements and reasonable attorney fees.

DATED:   November 26, 2018.

                         s/ David D. Park
                         David D. Park, OSB #803358
                         ELLIOTT & PARK, P.C.
                         Nelson R. Hall, OSB #852221
                         BENNETT HARTMAN MORRIS
                         Attorneys for Plaintiffs

ELLIOTT & PARK, P.C.
Attorneys at Law
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
(503) 227-1690
Fax: (503) 274-8384